UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------------------------ :
UNITED STATES OF AMERICA                         :
                                                 :  No. 3:03CR261(AHN)
v.                                               :
                                                 :
MARVIN SMITH                                     :
                                                 :
------------------------------------------------ :  April 4, 2005
```

### DEFENDANT MARVIN SMITH'S MEMORANDUM
### IN AID OF SENTENCING

### INTRODUCTION

On June 1, 2000, Marvin Smith was 48 years old, enjoying a quiet evening at home.  For years he had avoided the destructive lure of substances.  His 21-year-old daughter, Lakeia, was preparing for graduation from cosmetology school.  A shooting took place on the street outside his apartment.  Mr. Smith responded to the ruckus to discover that his beloved daughter, caught in the crossfire of a senseless street gunfight having nothing to do with her, had been shot in the head by a stray bullet and killed.  That night, for the first time in years, Mr. Smith returned to substances in an attempt to extinguish the pain.  That began a downward spiral which led to this sentencing.

### BRIEF SUMMARY OF ARGUMENT

Defendant Smith respectfully submits that his Adjusted Offense Level should be 19, providing for a guideline range of 33-41months.  That calculation is based upon a quantity of 3.5 grams, a criminal history category II and no career offender status.

The much higher level proposed by the PSR (188-235 months based on an offense level of 31 and criminal history category IV) derives from a quantity of 56.9 grams and the assignment of Career Offender Status, which, by default, would place defendant Smith into criminal history category IV.

The most significant differences between defendant Smith's calculations and those suggested by the PSR have to do with quantity and Career Offender treatment. While other differences will be explained below, these two will be addressed first.

## I.    DEFENDANT SMITH IS NOT A CAREER OFFENDER.

Defendant Smith begins with this argument since it plays a significant role in the court's analysis.

The United States Court of Appeals for the Second Circuit has made clear that in view of the significance of the sentencing enhancement, "the career offender guidelines are to be strictly construed in favor of the defendant." United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)(citing United States v. Liranzo, 944 F.2d 73, 79 (2d Cir. 1991).

Without Career Offender status, Mr. Smith's level drops significantly, and the guideline analysis changes in a variety of ways.

A.    Defendant Smith Does Not Have Two Qualifying Prior Drug Convictions.

U.S.C.G. § 4A1.2(a)(2) provides that "Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." Application Note 3 reads, in relevant part: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."

–2–

Paragraphs 48 and 49 of the PSR contain the two entries appearing to provide the basis for Career Offender status.  The entries reflect, however, that Mr. Smith was arrested on the same day.  The only basis for claiming that they are separate matters is that they appear to have been disposed of on two different dates.  Those two disposition dates, however, were separated by only 10 days.  The dispositions took place in the same court, with the sentences ordered to run concurrent with each other.  With only one arrest date there is only one reasonable finding: the entries must be treated as one for career offender purposes.

The entry at Paragraph 50 should not be counted as it is a conviction for possession.

Also noteworthy is that the arrest dates predate the criminal activity in this case by well over 15 years.

## II.     CRIMINAL HISTORY CATEGORY II

PSR paragraph 51 states that but for the career offender status, Mr. Smith's criminal history category would be III.  Since the entries at paragraphs 48 and 49 are related cases for both criminal history and career offender treatment, Mr. Smith's criminal history category is actually II.

## III.     DEFENDANT SMITH SHOULD ONLY BE SENTENCED FOR THE COUNT TO WHICH HE PLEADED GUILTY.

Defendant Smith pleaded guilty to Count 1 of the indictment, which charges him with a drug transaction involving 3.5 grams.  That conviction provides a base offense level pursuant to U.S.S.G. § 2D1.1 of 22.  Criminal History Category II provides a guideline range (absent other adjustments) of 46-57 months.

–3–

The PSR, however, holds Mr. Smith accountable for a transaction with respect to which he neither plead nor was found guilty. That transaction purports to involve 53.4 grams. Adding that quantity to the 3.5 grams produces a total quantity of 56.9 grams. That provides a base offense level of 32. Criminal History Category II provides a guideline range (absent other adjustments) of 135-168.

The difference, obviously, is significant. As is explained below, defendant Smith urges the court to find that Relevant Conduct should not be utilized to aggregate crimes of conviction with crimes where there has been no conviction.

A. Relevant Conduct.

Defendant Smith recognizes that aggregating quantities from transactions which are not the subject of the count of conviction is customary in accordance with Relevant Conduct, U.S.C.G. § 1B1.3. Defendant Smith respectfully challenges that practice, as is more particularly set forth below.

United States v. Watts, 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam) is the Supreme Court case most frequently cited in support of the practice of aggregating drug transactions beyond the offense of conviction. Vernon Watts' case was consolidated with that of Cheryl Putra. A jury convicted Ms. Putra of a drug offense occurring on one date, while acquitting her of an offense which occurred on a different date. The drug quantity attributable to the acquitted conduct was aggregated for sentencing purposes.

The majority in Watts permitted the quantities to be aggregated. Set forth below, however, are the factors and arguments supporting counsel's good faith expectation that the Supreme Court will revisit that decision.

–4–

The <u>Watts</u> opinion, itself, was a per curiam opinon, issued without argument or full briefing.  Two Justices (Stevens and Kennedy) issued dissenting opinions. Two other Justices (Scalia and Breyer) issued opinions which, while concurring in the result, disagreed with each other over the Sentencing Commission's powers in this area.

Most significant, however, is the following position set forth by Justice Stevens in his dissent appearing on Page 163:

> If the guilty verdict provided the only basis for imposing punishment on Ms. Putra, the Guidelines would have required the judge to impose a sentence of no less than 15 months in prison and would have prohibited him from imposing a sentence longer than 21 months.

> If Putra had been found guilty of also participating in the 5-ounce transaction on May 9, 1992, the Guidelines would have required that both the minimum and the maximum sentences be increased;  the range would have been between 27 and 33 months.   As the District Court applied the Guidelines, precisely the same range resulted from the **641 acquittal as would have been dictated by a conviction.   Notwithstanding the absence of sufficient evidence to prove guilt beyond a reasonable doubt, the alleged offense on May 9 led to the imposition of a sentence six months longer than the maximum permitted for the only crime that provided any basis for punishment. [FN2]

> *164 ***In my judgment neither our prior cases nor the text of the statute warrants this perverse result.   And the vigor of the debate among judges in the Courts of Appeals on this basic issue belies the ease with which the Court addresses it, without hearing oral argument or allowing the parties to fully brief the issues.*** [FN3]

> > FN3. Although the Court's decision suggests that the approach taken by the Ninth Circuit in these cases breaks from settled law in every other Circuit, the opinion ignores the fact that respected jurists all over the country have been critical of the interaction between the Sentencing Guidelines' mechanical approach and the application of a preponderance of the evidence standard to so-called relevant conduct.  See, e.g, <u>United States v. Silverman,</u> 976 F.2d 1502, 1519, 1527 (C.A.6 1992) (Merritt, C. J., dissenting); Id., at 1533 (Martin, J., dissenting);  <u>United States v. Concepcion,</u> 983 F.2d 369, 389, 396 (C.A.2 1992) (Newman, C. J., concurring) ("A just system of criminal sentencing cannot fail to distinguish

–5–

between an allegation of conduct resulting in a conviction and an allegation of conduct resulting in an acquittal"); United States v. Galloway, 976 F.2d 414, 436 (C.A.8 1992) (Bright, J., dissenting, joined by Arnold, C. J., Lay, J., and McMillian, J.); United States v. Restrepo, 946 F.2d 654, 663 (C.A.9 1991) (Pregerson, J., dissenting, joined by Hug, J.); id., at 664 (Norris, J., dissenting, joined by Hug, J., Pregerson, J., and D.W. Nelson, J.).  Cf. United States v. Lanoue, 71 F.3d 966, 984 (C.A.1 1995) ("Although it makes no difference in this case, we believe that a defendant's Fifth and Sixth Amendment right to have a jury determine his guilt beyond a reasonable doubt is trampled when he is imprisoned (for any length of time) on the basis of conduct of which a jury has necessarily acquitted him").   See also Martin, The Cornerstone Has No Foundation: Relevant Conduct in Sentencing and the Requirements of Due Process, 3 Const.  L.J. 25, 34-36 (1993);  Beale, Procedural Issues Raised by Guidelines Sentencing: The Constitutional Significance of the "Elements of the Sentence," 35 Wm. & Mary L.Rev. 147, 157-158 (1993);  Herman, The Tail that Wagged the Dog: Bifurcated Fact-Finding under the Federal Sentencing Guidelines and the Limits of Due Process, 66 S. Cal. L.Rev. 289 (1992);  Heaney, The Reality of Guidelines Sentencing:  No End to Disparity, 28 Am.Crim. L.Rev. 161, 208-220 (1991).

Id., page 163, Emphasis Added.

Justice Kennedy, in his dissent observes:

...it must be noted the case raises a question of recurrent importance in hundreds of sentencing proceedings in the federal criminal system.  We have not decided a case on this precise issue, for it involves not just prior criminal history but conduct underlying a charge for which the defendant was acquitted.  At several points the per curiam opinion shows hesitation in confronting the distinction between uncharged conduct and conduct related to a charge for which the defendant was acquitted.  The distinction ought to be confronted by a reasoned course of argument, not by shrugging it off.

 At the least it ought to be said that to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal, concerns noted by Justice STEVENS and the other federal judges to whom he refers in his dissent.   If there is no clear answer but to acknowledge a theoretical contradiction from which we cannot escape because of overriding practical

–6–

LAW OFFICES OF ROBERT SULLIVAN 190 Main Street Westport, CT 06880 Tel. 203/227-1404 Juris No. 405837 Federal Bar No.CT08969

considerations, at least we ought to say so.    *171 Finally, as Justice STEVENS further points out, the effect of the Sentencing Reform Act of 1984 on this question deserves careful exploration.   This is illustrated by the fact that Justices SCALIA and BREYER each find it necessary to issue separate opinions setting forth differing views on the role of the Sentencing Commission.

For these reasons the cases should have been set for full briefing and consideration on the oral argument calendar.   From the Court's failure to do so, I dissent.

Id., P. 170.

Even the majority made the following observation:

We acknowledge a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence. [FN2]   The cases before *157 us today do not **638 present such exceptional circumstances, and we therefore do not address that issue. We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.

> FN2. See McMillan, 477 U.S., at 88, 106 S.Ct., at 2417 (upholding use of preponderance standard where there was no allegation that the sentencing enhancement was "a tail which wags the dog of the substantive offense");  Kinder v. United States, 504 U.S. 946, 948-949, 112 S.Ct. 2290, 2291-2292, 119 LED.2d 214 (1992) (White, J., dissenting from denial of certiorari) (acknowledging split); United States v. Kikumura, 918 F.2d 1084, 1102 (C.A.3 1990) (holding that clear-and-convincing standard is implicit in 18 U.S.C. § 3553(b), which requires a sentencing court to "find" certain facts in order to justify certain large upward departures; not reaching the due process issue);  United States v. Gigante, 39 F.3d 42, 48 (C.A.2 1994), as amended, 94 F.3d 53, 56 (1996) (not reaching due process issue;  "In our view, the preponderance standard is no more than a threshold basis for adjustments and departures, and the weight of the evidence, at some point along a continuum of sentence severity, should be considered with regard to both upward adjustments and upward departures....   Where a higher standard, appropriate to a substantially enhanced sentence range, is not met, the court should depart downwardly");

–7–

United States v. Lombard, 72 F.3d 170, 186-187 (C.A.1 1995) (authorizing downward departure in "an unusual and perhaps a singular case" that may have "exceeded" constitutional limits, where acquitted conduct calling for an "enormous" sentence enhancement "is itself very serious conduct," "where the ultimate sentence is itself enormous, and where the judge is seemingly mandated to impose that sentence"); see also United States v. Townley, 929 F.2d 365, 369 (C.A.8 1991) ("At the very least, McMillan allows for the possibility that the preponderance standard the Court approved for garden variety sentencing determinations may fail to comport with due process where, as here, a sentencing enhancement factor becomes 'a tail which wags the dog of the substantive offense' ") (quoting McMillan, supra, at 88, 106 S.Ct., at 2417); United States v. Restrepo, 946 F.2d 654, 656, n. 1 (C.A.9 1991) (en banc) (suggesting that clear-and-convincing evidence might be required for extraordinary upward adjustments or departures), cert. denied, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); United States v. Lam Kwong-Wah, 966 F.2d 682, 688 (C.A.D.C.) (same), cert. denied, 506 U.S. 901, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992); United States v. Trujillo, 959 F.2d 1377, 1382(CA7) (same), cert. denied, 506 U.S. 897, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992). But see United States v. Washington, 11 F.3d 1510, 1516 (C.A.10 1993) ("At least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit"), cert. denied, 511 U.S. 1020, 114 S.Ct. 1404, 128 L.Ed.2d 76 (1994).

In the recent landmark decision U.S. v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005) the current Supreme Court made the following observations about the Watts decision:

In Watts, relying on Witte, we held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines. In neither Witte nor Watts was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue we confront today simply was not presented. [FN4]

FN4. Watts, in particular, presented a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full

–8–

briefing or oral argument.  It is unsurprising that we failed to consider fully the issues presented to us in these cases.  See 519 U.S., at 171, 117 S.Ct. 633 (KENNEDY, J., dissenting).

Finally, the <u>Booker</u> court observed as follows:

It has been settled throughout our history that the Constitution protects every criminal defendant "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U. S. 358, 364 (1970). It is equally clear that the "Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." <u>United States v. Gaudin</u>, 515 U. S. 506, 511 (1995). These basic precepts, firmly rooted in the common law, have provided the basis for recent decisions interpreting modern criminal statutes and sentencing procedures. In <u>Jones v. United States</u>, 526 U. S. 227, 230 (1999).

<u>Id.</u>

The aggregation of the quantity from the charge to be dismissed is, truly, one of the tail wagging the dog.  The plea in the 3.5 gram count produces a sentence that is significantly lower than the sentence produced by application of relevant conduct.

Noteworthy is that defendant Smith was not going out of his way to engage in the second transaction.  Paragraph 11 of the PSR demonstrates that it was the CW who was inquiring about a bigger transaction, to which defendant Smith replied that it must be done by the coming Friday because defendant Smith was going to be "shutting down for a couple of months".

Defendant Smith respectfully urges the court to sentence him only for the 3.5 gram quantity which is the subject of the count to which he has entered his plea.

–9–

**IV.    THERE IS NO BASIS FOR AN ENHANCEMENT FOR OBSTRUCTION OF JUSTICE.**

During the pendency of these proceedings, a Confidential Informant approached the case agents, claiming that defendant Smith intended to do harm to the original complaining witness.  That claim led to a motion by the government to revoke Mr. Smith's release.  The charge was adamantly denied by Mr. Smith.  At the time of the motion, however, Mr. Smith's lawyer was compelled to move to withdraw as counsel due to a conflict of interest.  Although Mr. Smith sought and obtained new counsel, that took some time.  During the interim, defendant Smith did not challenge the bond revocation, expecting it to be revisited when replacement counsel entered the case.

Immediately upon the entry of undersigned counsel into the case, he resumed the plea negotiations which had begun with prior counsel.  Inter alia, it was agreed that a plea would enter without Mr. Smith's seeking to overturn the revocation of release.  Mr. Smith cooperated with the government in its efforts to refrain from disclosing of the identity of the informant.

On the other hand, Mr. Smith vigorously denies any intention of harming anyone. Independently, Mr. Smith knows the CI to be a someone who was once as close as a family member, (indeed, someone who once called Mr. Smith father due to Mr. Smith's close relationship with the CI's mother) who, at the time of the alleged obstruction was displeased with Mr. Smith and had an axe to grind.

The government clearly recommended a three-point reduction for Acceptance of Responsibility, aware of the CI's claims about Mr. Smith.  The government has not claimed an adjustment for Obstruction of Justice. Defendant Smith respectfully requests that the court respect the government's considerations in taking said positions and decline any enhancement.

–10–

**V.     DEFENDANT SMITH IS ENTITLED TO ACCEPTANCE OF RESPONSIBILITY**.

In the plea agreement, the government agrees to recommend a three-point reduction for Acceptance of Responsibility.  The only basis set forth in the PSR for denying it is the CI's claims creating the appearance of an attempt to obstruct justice. All facts relating to that matter were fully known to the government at the time that the plea agreement was entered into and it agreed to recommend Acceptance of Responsibility.

Defendant Smith is entitled to Acceptance of Responsibility.

**VI.     ASSISTANCE TO STATE AUTHORITIES**.

While Mr. Smith was on release, a television report of a police story ran a picture of a person known to Mr. Smith.  The person was a suspect in a bank robbery. According to the report, the Vernon police had been unable to identify him and were looking to the public for assistance.  Mr. Smith contacted the Vernon police and identified the suspect.  Mr. Smith was asked if he would be willing to visit Police headquarters the following week to sign a report confirming the identification.  Mr. Smith agreed.  In the meantime, however, he was taken into custody in connection with the claimed violation of the release conditions imposed in this case.  The Vernon police did not know that Mr. Smith had been taken into custody.  The enclosed materials from the Vernon police (Exhibit A) in suggesting that he did not follow through and was unwilling to testify are understandable, as the police were not aware that he had, in the meantime, been taken into custody.  Although acknowledging Mr. Smith's substantial assistance, they are less enthusiastic than they would have been if Mr. Smith had made the appointment.

–11–

Mr. Smith's assistance to local authorities qualifies him for a reduction for having provided substantial assistance to local authorities pursuant to 5K2.0.  The Second Circuit has held that substantial assistance to local law enforcement authorities may warrant a downward departure pursuant to the general departure provision in § 5K2.0. See United States v. Kaye, 140 F.3d 86, 87-89 (2d Cir. 1998).

The Court has recently reaffirmed Kaye.  See United States v. Korman, 343 F.3d 628, 631 (2d Cir. 2003). Although the Second Circuit has not specifically addressed whether such a departure requires a government motion, see United States v. Napoli, 179 F.3d 1, 18 (2d Cir. 1999) (declining to review district court's conclusion that a motion was required), it seems clear that there is no such requirement. First, because such a departure would be pursuant to § 5K2.0, there would be no basis in the guidelines for such a requirement. Second, the court in Kaye observed that, unlike the situation where the defendant has assisted a federal investigation, Assistant United States Attorneys have no advantage over the court in evaluating cooperation rendered to state or local authorities. See Kaye, 140 F.3d at 88. Indeed, the Court explicitly identified tension between federal and state authorities as a reason not to require federal evaluation of such assistance. See Kaye, 140 F.3d at 88.

Although § 5K1.1 sets forth factors the court may consider in determining the "appropriate reduction," such as the timeliness, nature, extent, completeness, and value to the government of the cooperation, the size of the reduction in sentence is committed to the discretion of the sentencing court.  The Court cannot refuse to depart simply because the government fails to make a specific recommendation. See United States v. Campo, 140 F.3d 415, 418 (2d Cir. 1998). Indeed, when the same district judge involved

–12–

LAW OFFICES OF ROBERT SULLIVAN 190 Main Street Westport, CT 06880 Tel. 203/227-1404 Juris No. 405837 Federal Bar No.CT08969

in <u>Campo</u> suggested in a subsequent case that he would have imposed a lower sentence if only the government had recommended one, the case was remanded for reassignment to a different judge for re-sentencing. See <u>United States v. Doe</u>, 348 F.3d 64, 68 (2d Cir. 2(03).

  In short, Mr. Smith is eligible for the departure in accordance with 5K2.0.

         Respectfully submitted,
         DEFENDANT MARVIN SMITH

         By_____
          Robert J. Sullivan, Jr.
          LAW OFFICES OF ROBERT SULLIVAN
          190 Main Street
          Westport, Connecticut 06880
          Tel. No. 203/227-1404
          Federal Bar No. CT08969

LAW OFFICES OF ROBERT SULLIVAN 190 Main Street Westport, CT 06880 Tel. 203/227-1404 Juris No. 405837 Federal Bar No.CT08969

**CERTIFICATION**

       This is to certify that a copy hereof was hand delivered on April 4, 2005 to the following:

Michael E. Runowicz, AUSA
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

Office of U.S. Probation
915 Lafayette Blvd.
Bridgeport, CT 06604

_____
Robert J. Sullivan, Jr.

-14-