| Item | STATUS CODE C = COMPLAINANT · V = VICTIM A = ARRESTEE AR = ARRESTEE DANGEROUS W = WANTED ON WARRANT J = JUVENILE REFERRED O = OTHER M = MISSING | | | SEX | RACE | DATE OF BIRTH MONTH DAY YEAR | | | TELEPHONE | ADDRESS |
|---|---|---|---|---|---|---|---|---|---|---|
| | LAST NAME | FIRST NAME | | | | | | | | |
| 1 | RUNLETT | D.PD093 | | | | | | | | |
| C | SMITH | MARVIN | L | M | B | 7 | 24 | 51 | | 1ka 255 WEST IVY STREET. |
| A | LEO THE LION | | M | M | B | 7 | 24 | 49 | | SAME 255 W. Ivy St |
| Q | VAUGHAN | PHYLISS | F | F | B | 7 | 29 | 59 | 782-0331 | 1 NORTON ST 1ST FLR RT,APT 1C. |
| Q | KENDALL | E.PD093 | | | | | | | | |
| P | RANDALL | R.PD093 | | | | | | | | |
| P | MAHER | V.PD093 | | | | | | | | |
| P | GARCIA | R.PD093 | | | | | | | | |

During the week of 11-9-86 I received a telephone call from a person who wished to remain anonymous for fear of personal safety should the identity of this caller be made known through out any portion of this investigation. That this anonymous caller related to me certain information of persons that were selling cocaine from the premises known as 1 Norton St, New Haven, Connecticut, first floor right. That this cocaine is being sold on a daily basis in amounts costing $30.00, $50.00 in grams. That the persons responsible for this cocaine trafficking are known to the caller as Phyliss Ross and Leo the Lion. That Phyliss Ross sells the cocaine from her apartment and that Leo the Lion is the person who supplies Phyliss Ross with the cocaine to sell from these premises. That the caller has been present on the premises of 1 Norton St., 1st floor, right, New Haven,Connecticut, when cocaine transactions took place and actually witnessed the exchange of cocaine and monies between Phyliss Ross and customers who were present. That the cocaine and money is kept somewhere in a rear bedroom of this location. That as recently as the evening of 11-7-86, the caller who was present within the premises of 1 Norton St, 1st flr right, New Haven,Connecticut, with Phyliss Ross and Leo the Lion. That on that date, the caller witnessed an amount of cocaine within the premises estimated to the caller to be valued at approximately $2,000.00. That Leo the Lion also used this location as a "safe house", where he keeps large sums of money.

The anonymous caller described Phyliss Ross as being a black female, in her mid 20's, medium height, weight approximately 150 lbs., being approximately 5'4" tall,and having a dark complexion. The caller described Leo the Lion as being a black male, medium height, and having connections in Waterbury, Connecticut. The caller stated that Phyliss Rosse has two children, one who is a baby and the second being a daughter, approximately 7 years of age, which the caller stated

EXHIBIT 1

was fathered by Leo the Lion.

That I am familiar with the person with the alias of Leo the Lion. That I know his true name to be Marvin Smith.
That I am also aware of the fact that Marvin Smith is currently being sought by the NHPD pursuant to the outstanding arrest warrant on file for him, charging him with Possession of Cocaine. That the author of this warrant is a member of the Street Crime Unit with myself, that being Off Joseph Greene. I further am aware of the fact that Marvin Smith is also currently being sought by the Connecticut State Police, State Wide Narcotics Task Force, Central Division, pursuant to recent narcotics investigation of which members of that Unit had initiated earlier this year. That this State Police warrant charges Marvin Smith, alias Leo the Lion, with operating a Drug Factory, Possession of Narcotic Substance, Possession of a Narcotic substance with an intent to sell, and Possession of Drug Paraphernalia. That the court set bond on this warrant is in the amount of $100,000.00.

After advising my supervisor, Lt Rafael Garcia, of the phone call which I had received, I initiated an investigation. I conducted a records check of Marvin Smith, alias Leo the Lion, with the Department's records division. I found that him arrest number with this Department is #24916. That Marvin Smith has two dates of birth listed with this Department those being 7-24-49, and 7-24-51, describing him as being a black male. That Marvin Smith has been arrested in the past by various members of this Department including myself for various narcotic violations.

That those violations and convictions are as follows:

1. That on December 6,1977, I arrested Marvin Smith for Possession of Marijuana and Possession of Marijuana with the Intent to Sell, and that he was subsequently convicted on March 4,1978, and received a sentence of 2-5 years, probation for three years and three to six years both suspended and probation for three years.

2. That on September 25,1979, Marvin Smith was arrested for Possession of Marijuana and was convicted on April 1,1980 and received a $50.00 fine.

3. That on June 5,1981 Marvin Smith was arrested for Possession of Cocaine with Intent to Sell and was convicted on September 23,1982, and received a sentence of not less than three years and not more than six years.

4. That on April 1,1982, Marvin Smith was arrested for Sale of Heroin, two counts, and was convicted on each count on September 23,1982, and received a sentence of six years and six years consecutive.

That I subsequently discussed the aforementioned information with Officers Melvin Daniels and Robert Brooks, both officers being members of the Street Crime Unit with me. That they also assisted in this investigation. That during the week of November 16,1986, Daniels and Brooks contacted a known and reliable informant of theirs for the purpose of seeing if this informant could purchase cocaine for them under control circumstances from the premises known as 1 Norton St, 1st floor right, apartment 1C, New Haven, Connecticut. That this known and reliable informant of theirs has provided these officers with information in the past which was found to be true, reliable, and accurate. That this attempt met with negative results. That this informant was not able to purchase cocaine from said premises.

COPY B

11363

That again during the week of November 16, 1986, Brooks and Daniels contacted another known and reliable informant of theirs, for the purpose of purchasing cocaine under controlled circumstances from said premises. This second informant is also a known and reliable informant of theirs, who has given these officers information in the past that has proven to be true, reliable and accurate. Again their efforts met with negative results as this informant was unable to purchase cocaine from said premises. This second informant however, did speak with the occupant of said premises, and described this occupant as being a black female named Phyliss having a dark complexion, and being in her late 20's or early 30's.

Thru these officers training and experience in the field of narcotics, it is not uncommon for narcotic dealers to refuse to sell their narcotic substances to persons who they don't know. That it is common for these narcotic dealers to sell only to a select group of people, that being either persons that they know or persons who are regular customers.

That on 11-26-86, at approximately 1200 hours, I received another telephone call from another person who stated that she is a member of the local citizens block watch association and that she wanted to keep her identity anonymous for fear of her personal safety as well as the safety of her family. That this caller stated that she had information regarding an on going cocaine trafficking operation being conducted from the premises known as 1 Norton St., 1st floor, right, New Haven, Connecticut. That this cocaine trafficking is occurring on a daily basis. That the persons responsible for this cocaine trafficking are known to the caller as Phyliss Vaughn and Marvin Smith who also has the name of Leo.

The caller described Phyliss Vaughn as being a black female, in her late 20's, approximately 5'6" tall, and having a dark complexion. The caller stated that Phyliss Vaughn has two children, ages approximately 3 and 8, the caller described Marvin Smith as being a black male, approximately 5'8" tall, having a husky build, and having short hair and being in his mid 30's. The caller also stated that Marvin Smith had just purchased a new van, that being a 1987 van, possibly a Dodge van, that is white on the top and blue on the bottom. That on occasion Marvin Smith also drives a smaller model grey Lincoln. The caller added that it is also possible that Marvin Smith operates rented vehicles.

The caller stated that Marvin Smith comes to the apartment of Phyliss Vaughn at 1 Norton St 1st floor right, New Haven, Connecticut, many times during the week, that the caller saw Marvin Smith and two unknown black male subjects exit this blue and white van on this date at approximately 0930 hours and enter the apartment of Phyliss Vaughn.

The caller stated that she has been present in the apartment of Phyliss Vaughn at 1 Norton St 1st floor, right, New Haven, Connecticut and witnessed cocaine transactions between Phyliss Vaughn and customers. That as recent as the week of 11-23-86, the caller witnessed cocaine transactions on these premises. That the cocaine was wrapped in tin foil, that the caller also saw what she believed to be crack cocaine in small vials in this apartment to be sold.

Subsequently thereafter I conducted a department computer check of Phyliss Vaughn, that this computer check revealed that a Phyliss Vaughn, a black female, having a date of birth of 7-29-59, resides at 1 Norton St, New Haven, Connecticut, as recently as 9-6-86.

I then checked the directory of the SNET and found a listing for an initial P. Vaughn, 1 Norton Street, New Haven, Connecticut, that telephone number being 782-0331. A telephone security check

113663

was then conducted of this number, and this number was found to be listed to a initial P. Vaughn, 1 Norton Street, Apt. 1C, New Haven, Connecticut.

~~That during this investigation I contacted Officer Vaughn Maher, who is a member of the NHPD currently assigned to the division of the Connecticut State Police, State Wide Narcotics Task Force, Central Division. The purpose of this call was to ascertain if Off Maher had received any information or intelligence regarding Marvin Smith, Phyliss Vaughn or any narcotic activity from the premises known as 1 Norton Street, 1st floor right, apartment 1C New Haven, Connecticut. Off. Maher who is also familiar with Marvin Smith stated that during the week of November 16, 1986, his unit had received an anonymous telephone call from a person reporting cocaine trafficking from these premises. That the caller stated that this cocaine trafficking was on a daily basis and that the persons responsible for this cocaine trafficking were Marvin Smith and Phyliss Vaughn.~~

That I am also familiar with the premises known as 1 Norton St New Haven, Connecticut from a previous narcotic investigation which occurred in January of 1984. That 1 Norton St, New Haven, Connecticut is a three story multi-apartment complex with the beginning of Norton St. That #1 Norton St is boarded on the south side by George St and on the north side by Derby Ave. That 1 Norton St is an off-white colored building, having an orange trim. That the front of the building has two front doors that are both glass and wood. That the door on the right leads to the first floor right. That the apartment on the first floor right is apartment 1C.

That during the mid afternoon hours of November 26, 1986, Officers Edward Kendall and Richard Randell who are both members of this Department's Street Crime Unit conducted a surveillance of 1 Norton St New Haven, Connecticut for approximately one hour. That Officer Kendall related to me that after his surveillance that during this time period they observed five unknown black male subjects enter into and upon the premises of the first floor right of 1 Norton St. That these subjects entered and exited the premises individually of one another. That they each spent only a couple of minutes inside the premises and then exited the premises. That this type of activity is indicative to these officers of narcotic activity.

Based upon the totality of the aforementioned facts and circumstances I will prepare and submit to the superior court of New Haven a search and seizure application for the persons known as Phyliss Vaughan and Marvin Smith as well as the premises known as 1 Norton St, 1st floor right, apartment 1 C, New Haven, Connecticut.

This investigation will continue.

COPY B

THIS REPORT IS SIGNED UNDER THE PENALTIES PROVIDED BY
STATE LAW FOR MAKING A FALSE STATEMENT

SIGNED [signature]
DATE 12-3-86
PAGES 4/4

MAG

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 113663 | 11-29-86 | 7 | 1100 | 11-29-86 | 2300 | Narcotic Investigation | 4813 | Edward Kendall |
| 01 | Norton Street | | | | | 1-C | 093 | Derby Avenue | | GA 6th SCU | P-86-946 |

| STATUS CODE | LAST NAME | FIRST NAME | SEX | RACE | DATE OF BIRTH | TELEPHONE | ADDRESS |
|---|---|---|---|---|---|---|---|
| C | Runlett | D. | M | B | 07 24 | 573-2404 | 255 West Ivy Street New Haven |
| AX | Smith | Marvin | M | B | 07 24 51 | | 167 Wood Street Waterbury |
| AL | Lion AKO THE LION | | | | | | 958 North Main Street Waterbury |
| 0 | Randall | R. PD-093 | F | B | 07 29 59 | | 01 Norton Street New Haven Apt. 1-C |
| 0 | Vaughan | Phyliss | F | B | | | 766 George Street West Haven |
| 0 | Vaughan | Tracey | M | B | 01 23 52 | 795-3675 | 73 Knox Street West Haven |
| 0 | Jackson | Rodney | M | B | 3 Yrs Old | | 73 Knox Street West Haven |
| 0 | Davis | Anthony | M | B | 11 26 58 | | 163 Read Street New Haven |
| 0 | Conley | Christopher | | | | | 958 North Main Street Waterbury |
| | Dodge Van 1987 | John | | | | | Vin: 2B6HB23T9HK230424 |
| 0 | Taylor | Sgt. PD-093 | | | | | |
| 0 | Lilis | Sgt. PD-093 | | | | | |
| 0 | Burton | G. PD-093 | | | | | |
| 0 | DiNello | R. PD-093 | | | | | |
| 0 | Grice | C. PD-093 BofI | | | | | |
| 0 | Milano | A. PD-093 | | | | | |
| 0 | Cohens | Lt. PD-093 | | | | | |
| 0 | Catapano Towing Service | | | | | | NONE |

That on November 29, 1986, Officer Edward Kendall and Officer Richard Randall did begin a surveillance of number one Norton Street, New Haven, Connecticut. Prior to the surveillance, both Officers were briefed by Detective Dean Runlett and Lt. R. Garcia of an ongoing narcotic operation being conducted out of number one Norton Street, apartment C-1. According to the briefing, the operation was being supplied by Marvin Smith, also known as Leo The Lion wanted on arrest warrants by The State Police. The New Haven Police Department and Waterbury Police Department. According to Runlett and Garcia a Search Warrant was prepared after a lengthy investigation for the person of Marvin Smith, and Phyliss Vaughan, along with the apartment at number one Norton Street, New Haven Connecticut, 1-C. That according to the information supplied by Runlett and Garcia, Marvin Smith was operating a new Dodge Van, color blue and white, or possibly a Lincoln or a rental vehicle. That the Search Warrant also included narcotics to be seized within the apartment as well as the two listed persons.

That while conducting the surveillance of number One Norton Street, both Officers did observe a blue and white Dodge Van pull up on George Street near Derby Avenue. The van did fit the description given by Runlett and Garcia and appeared to be brand new. That further surveillance revealed Marvin Smith exiting the operator side door with two black males entering

**DEPARTMENT OF POLICE SERVICE**
**SOUTH CENTRAL REGION**
**CASE/INCIDENT REPORT**
CONTINUATION PAGE TWO

113663

the passenger side with a small youth. That both Officers did observe Marvin Smith carrying a small grey leather case in his right hand from the van into Number One Norton Street. Also the other two black males and the youth were also observed entering number One Norton Street apartment C-1. It should be noted that apartment C-1 is clearly visable from the street along with the apartment entry door because of the glass doors which are in the hallway of the apartment.

That while all the parties were in the apartment, this Officer did go to a phone booth and called for additional Units to execute the search warrant. Before any of the units had arrived, Marvin Smith had exited the apartment still carrying the grey leather case, along with the two black males and the child also entered the passenger side. At this time the van pulled into the drivers seat. The other two subjects and the youth. Marvin Smith now entered the passenger side. This Officer and Officer Randall did away from the curb being operated by Marvin Smith going east on George Street. That this Officer did begin to call in locations so that a marked begin to follow the van which had no visable marker plate. This Officer and Officer Randall were in plain clothes and were using an patrol unit could make the stop of the vehicle. Sgt. Robert Lawlor did radio to this Officer that he would unmarked rental vehicle and could not make the stop of the van. The vehicle was still going east, failed to stop for the marked unit which had its over lights on and observed it approaching George Street and Park Street. The van went to the black the van and observed it approaching George Street and Park Street. The van now continued east on George Street directly behind the van and its over lights on and was parked blocking the Intersection. The van now failed to stop for the red control signal at the Intersection of George Street and York Street. It should Light of Lawlors patrol unit going up onto the curb and side walk to get past. The van did make a left hand turn onto York Street going with this Officer following and calling in the locations. That the van did make a left hand turn onto York Street with his north. The van failed to stop for the red control signal in front of these Officers with his b. noted that the van was traveling at a high rate of speed. Sgt. Lawlor did pull in front of these Officers with his overhead lights on and the van continued north on York Street and Broadway. All the controls were in control signals at the Intersection of York and Chapel, York and Crown, York and Chapel. During the pursuit on York Street numerous vehicles a red condition and Smith refused to stop for the marked partol unit. During the pursuit on York Street when it reached the end and made a red condition. The area of York and Chapel is frequented by studnets, shoppers, and vehicles due and pedestrians were all most struck. The van now continued north on York Street. Sgt. Lawlor to the large amounts of stores and apartments. The van now continued north on York Street and Bristol Street. The van began to run. Lt. Cohens had blocked off the Intersection of Ashmun Street and Bristol Street. Sgt. Lawlor a left turn onto Ashmun Street. Lt. Cohens made a left turn onto Lake Place going the wrong way on a one way Street. The van van before reaching Bristol Street made a left turn onto Lake Place going the wrong way on a one way Street. The van still behind the van with his overhead loghts on continued to pursue with these Officers behind in the rental. The van continued south on Lake Place until it reached Dixwell Avenue and made a right turn going west. The van continued on Dixwell Avenue until it pulled into the rear parking lot of Keyes Funeral Home. Sgt. Lawlor pulled into the lot with the van while this Officerand Officer Randall stayed in the front. Marvin Smith did jump out of the operator seat of the van. The chase and began to run. Smith was subsequently chased down by Officer Randall and this Officer and placed under arrest. Also with Chris- began at approximately 1130 hours. Also found in the van was Rodney Jackson, and his son Anthony Jackson, along with Chris- topher Davis. identification and warrant checks were conducted on both subjects and were found to be clear. Both were released.

Officer Milano did arrive and called for a tow truck for the van. The van was secured at this location and was towed to the Police Garage 710 Sherman Avenue. The van was towed by Catapano Garage and was secured with in a locked fenced in area at the police garage. Officer Randall did conduct a search of the person Marvin Smith and found the following: two glassine bags containing a white powder substance, one twenty dollar bill, serial number E26813966A containing

COPY B

FJ96G1

A white powder substance along with a roll of money, two fifty dollar bills, eighteen twenty dollar bills, eight one dollar bills and two five dollar bills for a total of $550.00 in cash. Officer Randall did seize the money and suspect cocaine from Marvin Smiths front right pants pocket. At the New Haven Police Department Officer Randall did conduct a chemical field test on one of the glassine bags containing the white powder. The field test did show a positive Cobalt Thiocyanate Reagent field test on one of the glassine bags containing the white powder. The field test did show a positive reaction for Cocaine. It should be noted that the glassine bags found on the person of Smith are indicative of the type sold on the street by dealers. Subsequent to the investigation conducted by Lt. Garcia, Detective Runlett, Officer Randall, Marvin Smith was placed under arrest for Possession with the further investigation by this Officer and Officer Randall. Marvin Smith was further charged with Narcotics, Possession of Narcotics With Intent to Sell, Interfering With A Police Officer, Possession of Narcotics with Intent to Sell and Wrong Way on a One Way Street. Marvin Smith was at this time remanded to The State Correction Facility to be processed for the charges.

The Statewide Narcotic Task Force was notified in regards to The apprehension of Marvin Smith to serve their warrant charging him with Operating a Drug Factory, Possession of Narcotics, Possession of Narcotics With Intent to Sell, and Possession of Drug Paraphernalia.

That at approximately 1310 hours, Sgt. Lillis, Detectives Runlett, Burton, DiNello, and Officers Randall and Kendall did conduct a briefing regarding the serving the search warrant at number One Norton Street, apartment C-1, New Haven. That during the briefing it was planned for Sgt. Lillis and Detectives Runlett and DiNello and Burton to go to the front door to make entry. That this Officer along with Officer Randall and Detective's Runlett and DiNello did take their positions. Officer Randall That upon reaching the apartment Sgt. Lillis, and detective's Runlett and DiNello did take their positions. Officer Randall did knock on the door and attempted to gain entry by using subterfuge. That a female answered the door and failed to open it for Randall. At this time Detective Burton and this Officer did force the door open. Upon gaining entry Tracey Vaughan was found within babysitting two small children. This Officer did give Tracey Vaughan a copy of the search warrant and explained that we were going to conduct a search of the apartment. That Officer Randall was designated as evidence officer and recorded the evidence in the following locations by the officer who found it.

Item A. One glassine bag with white residue, found under bed in Phyliss Vaughans room by Officer Kendall.
Item B. Shoe box with white powder and plant like residue, under Phyliss Vaughans bed by Officer Kendall.
Item C. Two chrome bowls with white powder residue on small stand in kitchen by Detective Runlett.
Item D. Magnifying glass with residue found in hall closet by Officer Kendall.
Item E. Plastic bag with plant material residue found in hall closet by Officer Kendall.

The above listed narcotic evidence will be sent to the state toxicology lab for analysis. Pending the results of the lab finding a warrant will be filed for.

Item 1. Two pictures of Marvin Smith found in small stand in kitchen by Detective Runlett.
Item 2. Three ink stamps two with the markings 86 on same, one with paradise on same found in hall closet by Officer Kendall.
Item 3. Documentation of residence Phyliss Vaughan, small stand in kitchen by Detective Runlett.
Item 4. Records of Transactions found on small stand in kitchen by Detective Runlett.
Item 5. Black tray with small bag in hall closet by Officer Kendall.

| SIGNED | THIS REPORT IS SIGNED UNDER THE PENALTIES PROVIDED BY STATE LAW FOR MAKING A FALSE STATEMENT |
|---|---|
| DATE 11/30/96 | PAGE 2/6 |

COPY B

113663

The following evidence was seized in regards to the paraphernalia and records of an ongoing narcotic operation being conducted out of number One Norton Street, apartment C-1, New Haven Connecticut. All the seized evidence in this case. A through E and 1 through 5 will be placed in The New Haven Police Department Property Room as evidence in this case. The premises was It should be noted that item number 4 does list varing amounts and names which reflect narcotic transactions. Phyliss Vaughan was not present and did not return to the apartment while these Officers were within. secured at 1420 hours and left in control of the baby sitter, Tracey Vaughan.

That at approximately 1530 hours, November 29, 1986, this Officer and Officer Runlett did go to The Police Garage where the Van operated by Marvin Smith was towed. Both Officers did enter the secure area and did begin a search of the van incidental to the arrest and also to conduct an inventory of the van. That during the search and inventory of the van the following evidence was seized.

1. One grey leather pouch having two zippers found under wet bar by Detective Runlett.
2. Within the grey leather pouch, three glassine bags containing a white powder substance, one with 55 written on same, one with 40 stamped on same, ten pink glassine bags containing a white powder substance.
3. Within Grey leather pouch, $2,800.00 in assorted US currency.
4. Within Grey leather pouch, three plastic bags containing a large amount of white powder substance. The envelope
5. One envelope containing 4 blue and yellow capsules found by Officer Kendall in glove compartment. had the name Leo on same.
6. Thirteen blue glassine bags, empty found by Officer Kendall in side storage holder of door.
7. One exterior spare tire cover, Vinyl, color blue, silver and black, having two lion heads on same by Officer Kendall on the spare tire of van.
7. A certificate of orgin for a vehicle, dated 10-14-86, Invoice HB2HF057303, of a Dodge B250 Van, model Ram B2L12, Vin 2B6HB23T9HK230423, dealer 67585 to Potamkin Chry-Ply-Dge Inc POB 980 666 11th Ave New York, Name of Purchaser John L Conley, 958 North Main Street Waterbury Connecticut.

One state of New York Department of Motor Vehicles Certificate of Sale E-782869 to the purchaser John Conley 958 North Main Street Waterbury Connecticut. The vehicle being a 1987 Cheve Van Dodge B250 Vin 2B6HB23T9HK230424.

One State of New York In-Transit Vehicle permit to a 1987 Dodge Van Vin 2B6HB23T9HK230424, #93986, made out to John Conley 958 North Main Street Waterbury Connecticut.

One customer copy from car tunes of Connecticut #2664 made out to Marvin Smith 167 Wood Street Waterbury Connecticut, 753-2404, date 11-22-86 in the amount of $552.63 Marked paid.

One customer copy of a new car from Potamkin Chry. Ply, Dodge dated 11-19-86 #8917, the purchasser ian for making a false statement. being John Conley 958 North Main Street, Waterbury Connecticut, 203-573-2404, 1987 Dodge Van Color White and blue.

COPY 8  WMAO   SIGNED Edward Kendall   DATE 11-30-86  PAGES 4/6

113663

One sales recipt from Potamkin Chry Plym Dodge, to John Conley .958 North Main Street Waterbury Connecticut, for a 1987 Dodge Van color white B250 Vin 2B6HB23T9HK230424, for a total cash price of $16,500.00 Invoice 08568.

One State of New York In-Transit Pla.e #493986, dated 11-19-86.

One set of keys on a blue key chain including the Key to the 1987 Dodge Van color white and blue, Vin 2B6HB23T9HK230424.

That Detective Runlett did conduct a Sirchie #4 Cobalt Thiocyanate Reagent Field Test on some of the white powder in one of the three plastic bags seized from the van. The field test resulted in a positive reaction for Cocaine. The evidence seized from the van as listed was placed in The New Haven Police Department Property Room as evidence in this case. The narcotic evidence will be sent to the State Toxicology lab for further analysis. It should be noted that all items were photographed by the BofI, Officer Grice before being moved.

Also the following items were placed in the property room from the van from the inventory for safe keeping.
1. One radar detector.
2. one fog light kit.
3. one vaccum cleaner.
4. Motor vehicle info and one dollar.

The van at this time was secure and locked by this Officer.

The leather pouch with its contents was located by Detective Runlett under the wet bar or sink area of the van. In order to locate the pouch Detective Runlett did remove the sink to recover same. The pouch was photographed it its orginal loaction before being examined. That the evidence seized in this incident is now complete.

That according to The New Haven Police Department Records Division along with Intelligence Information recieved from informants over the past 4 to 8 years, Marvin Smith has had the alias Leo The Lion. It also should be known that Marvin Smith or Leo The Lion has operated vans in the past as his motor vehicles. The vans in the past always had some type of marking or decale signifing a Lion. While conducting a check of the van this Officer and Officer Runlett did observe the spare tire cover on the exterior of the van. The cover was custom made with two Lion heads painted on same to signify Leo The Lion. The information concerning his alias is documented by The New Haven Police Department Records Division and the custom made cover was photographed on the van and placed in the property room to show his intended use of the van and also him as the operator or owner of the van. Also found in the van was reciepts in the name of Marvin Smith for parts for the van indicating his partnership with the owner of the van. His extended use of the van was also confirmed in the Search Warrant prepared by Detective Runlett and Lt. Garcia as the operator when he was observed at Number One Norton Street, a location where narcotics were being dispensed. That the reciepts found in the van were placed in The New haven Police Department Property Room as evidence in this case to show his use and involvement with the van transporting narcotics. Further investigation will follow concerning the ownership and the use of the van to transport narcotics.

The van itself will be placed in the property room as evidence in the case by Detective Runlett.

SIGNED Edward Runlett  DATE 11/30/86  PAGES 5/6

COPY B

These Officers will file for Federal Forfiture in regards to the money and property in th case. This twenty   
continue.

This Officer also identified the grey leather pouch found in the van as the same one carried into the apartment at Number One Norton Street by Leo The Lion or Marvin Smith prior to the chase and arrest. As noted prior the case was found to contain a large amount of narcotics and money.

SIGNED: Edward Kendall
DATE: 11-30-86
PAGES: 4/4

THIS REPORT IS SIGNED UNDER THE PENALTIES PROVIDED BY STATE LAW FOR MAKING A FALSE STATEMENT.

COPY 8

| Stat | LAST NAME | FIRST NAME | INIT | SEX | RACE | DATE OF BIRTH | ADDRESS | TELEPHONE | REL |
|---|---|---|---|---|---|---|---|---|---|
| C | Kendall | | 093 | | | | | | |
| C | Rendell | | 093 | | | | | | |

DETAILS

The two above officers apprehended 2 wanted subject operator of this veh. 1987 Dodge - Blue & white vehicle permit 493986 - New York State. Sgt. Lillis on the scene ordered the vehicle to be towed, sent to 710 Sherman Ave. Police impounded area, for further investigation, inventory.

This vehicle was locked by this officer, keys left with police garage personnel, J. Donroe.

Vehicle towed by Catepeno's Tow Company.

SIGNED: A. Milaus
DATE: 11-29-86
PAGES: 1

# DEPARTMENT OF POLICE SERVICES
## IDENTIFICATION UNIT REPORT

COMPLAINT NUMBER: __113663__   DATE: __11/29/86__

TYPE OF INCIDENT: __Supplement - Narcotics Investigation__
LOCATION: __710 Sherman__
OFFICER: __Chris Grice__

LATENTS FOUND:   YES   NO
PHOTOS:          (YES)  NO
INJURY PHOTOS:   YES   NO

REMARKS: Responded and met Det. Runlett and Officer Kendall at the Police Impound lot at 710 Sherman. I photographed a new Dodge Van with in-transit stickers (no plate) which had been towed there. Photographed a pouch containing suspected narcotic substance and money located in the bottom of a sink inside the van. The pouch had been placed back in the position Officer Kendall told me he found same for the photograph. Also photographed capsules found loose in the glove compartment and the contents of the pouch spread out in a display.

THIS REPORT IS SIGNED UNDER PENALTIES PROVIDED BY STATE LAW FOR MAKING A FALSE STATEMENT.
SIGNED: __Christopher Grice__
DATE: __12/1/86__