1

RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,      .      Case No. 3:03-CR-00261
                               .      (AHN)
                Plaintiff,     .
                               .      Bridgeport, Connecticut
     v.                        .      August 3, 2005
                               .
MARVIN SMITH,                  .
                               .
                Defendant.     .
. . . . . . . . . . . . . . .

SENTENCING HEARING
BEFORE THE HONORABLE ALAN H. NEVAS
SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        Office of the U.S. Attorney
                          By:  MICHAEL RUNOWICZ, ESQ.
                          450 Main Street
                          Hartford, Connecticut 06510

For the Defendant:        Law Offices
                          By:  ROBERT SULLIVAN, ESQ.
                          190 Main Street
                          Westport, Connecticut 06880

For Probation:            U.S. Probation
                          By:  USPO C.J. WAGGONSTEIN-VEGA
                          915 Lafayette Boulevard
                          Bridgeport, CT 06604

Court Monitor:            MS. MARIA CORRIETTE

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.
_____

1           (Proceedings commenced at 10:20 a.m.)

2                THE COURT:  Morning.

3                MR. RUNOWICZ:  Good morning, Your Honor.

4                MR. SULLIVAN:  Good morning, Your Honor.

5                THE COURT:  Mr. Runowicz?

6                MR. RUNOWICZ:  Your Honor, we're here before

7      the Court in the matter of United States of America v.

8      Marvin Smith, Case 3:03-CR-00261, obviously assigned to

9      Your Honor.  We're here for purposes of sentencing.

10               THE COURT:  All right.

11               Good morning Mr. Sullivan.

12               MR. SULLIVAN:  Good morning Your Honor.

13               Robert Sullivan appearing on behalf of

14     Defendant Marvin Smith.

15               THE COURT: Okay.  Mr. Smith?

16               THE DEFENDANT:  How ya doin'?

17               THE COURT:  Have you read the presentence

18     report?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  And have you had an opportunity

21     to discuss it with Mr. Sullivan?

22               THE DEFENDANT:  Yes, I have.

23               THE COURT:  Do you have any questions now,

24     about anything that's in that report that you want to

25     talk to Mr. Sullivan about further?

1   clerk's office under seal.  If no  appeal is taken, it

2   will be unsealed, returned to the probation office, and

3   if any appeal is taken, it will be unsealed and made

4   available to appellate counsel.

5          All right.  Are there issues in dispute with

6   respect to the presentence report and --  including the

7   calculations, Mr. Runowicz, from the governments point

8   of view?

9          MR. RUNOWICZ:  Well, from the government's

10  point of view, as the presentence report is presently

11  written, as I understood it, the Presentence report had

12  calculated Mr. Smith as a career offender, and I

13  believe that that is gonna come into dispute during the

14  course -- with respect to --

15          THE COURT:  Yeah, I understand that, but I'm

16  talking about as presently written, does the government

17  have any disputes?

18          MR. RUNOWICZ:  No, Your Honor, I do not.

19          THE COURT:  All right.

20          MR. RUNOWICZ:  As presently written.

21          THE COURT:  Mr. Sullivan?

22          MR. SULLIVAN:  None other than those that

23  have been addressed in the --

24          THE COURT:  Well, let's --

25          MR. SULLIVAN:  -- sentencing memorandum.

1          THE COURT:  -- address them.

2          MR. SULLIVAN: Shall we start?

3          THE COURT:  Yes.

4          MR. SULLIVAN:  Your Honor, I begin with the

5    career criminal treatment.

6          The -- As the Court knows from the sentencing

7    memoranda, we have argued to the Court that there are

8    two entries for the -- for which Mr. Smith was arrested

9    on the same date.

10          I argued in the memoranda that he should not

11    be treated as a career offender because that should be

12    created -- treated as a related offense, those two

13    entries.

14          This morning, Mr. Runowicz provided to me, a

15    copy of a police report which I -- it looks to me that

16    he's provided a copy of that to the Court, actually

17    several police reports.

18          I would argue that this continues to support

19    my position that those two should not be counted

20    separately.  It seems to me that as I read these

21    reports, what they're advising is that Mr. Smith had

22    been investigated for what it was he was in fact

23    arrested fork, for operating a drug distribution outlet

24    out of his apartment, and following the investigation,

25    they had not yet executed the warrant.  It's not clear

1    to me whether they had tried and were unsuccessful, or
2    that they simply hadn't yet executed it but, one or
3    more persons came forward and said, "Do you know that
4    this person is running a drug operation in his
5    apartment?", and they said, in essence, "Yes, we've got
6    a warrant out for him," and then they go out and
7    execute the warrant.

8            It's clear to me that he was arrested on the
9    same date for everything that derives from that
10   incident.  So, it's -- under the guidelines it's clear
11   that if it's a common scheme or plan that forms the
12   basis for the two separate arrests, that that should be
13   treated as related for purposes of the guidelines.

14           It seems to me the rest -- materials just
15   underscore that this was all one related common scheme
16   or plan, and for that reason the Court should find that
17   he does not have two qualifying prior drug offenses.

18           THE COURT:  All right.

19           What about the report with respect to the
20   last arrest attributed zero points because it appeared
21   that -- the impression was that it was a non-custodial
22   arrest or conviction, but it turns out now, that it --
23   that he got five years for that, and so the guidelines
24   calculated zero points for that because it was a non-
25   custodial conviction but now, it was not a non-

1   custodial conviction.  So, it's -- it should not be
2   zero points.
3          Isn't that correct?
4          MR. SULLIVAN:  Your Honor, I had argued that
5   that should not be counted because it was a possession
6   charge that he was found guilty of, not a possession
7   with intent --
8          THE COURT:  I'm not talking about career
9   criminal now.  I'm talking about just if you were
10  calculating the guidelines.
11         Wouldn't you give him three points instead of
12  zero points for that?
13         Isn't that true Mr. Runowicz?
14         MR. RUNOWICZ:  Yes, it is correct, Your
15  Honor.
16         Initially, the presentence report, and
17  perhaps I was incorrect when I answered the Court's
18  question earlier.
19         The presentence report provided that that was
20  -- appeared to be an execution suspended, and
21  therefore, because it was more than 15 years from the
22  incident in this case, it would not be counted under
23  the guideline calculation.  However, I had obtained a
24  certified copy of the docket sheet which indicated that
25  this was, in fact, a five-year custodial sentence that

1    was to run concurrent with the previous -- previously

2    imposed 15-year sentences that Mr. Smith had, and

3    therefore, because it was five years as of September, I

4    believe, September 17th of 1987, while Mr. Smith was

5    serving that sentence, he would -- would have brought

6    him into the 15-year time frame provided under the

7    guidelines.  So therefore, it is to me, an accountable

8    offense and it should be three points because it's more

9    than one year and a month.

10              MR. SULLIVAN:  I don't have quarrel with

11   that, Your Honor, with respects to criminal histories

12   opposed to career offender.

13              THE COURT:  Okay, then you agree?

14              MR. SULLIVAN:  I do.

15              THE COURT:  All right.

16              Go ahead, Mr. Sullivan.

17              MR. SULLIVAN:  Well, Your Honor, I think

18   then, that would conclude my arguments as to career

19   criminal.

20              The last one that the Court mentioned, I

21   think, would create a situation where he's in Criminal

22   History Category III rather than II, but I don't

23   believe it's a qualifying offense for career criminal

24   offender status, and so therefore, I would conclude by

25   saying I think that the record is clear that he should

```
 1    not be counted as a career criminal.
 2              THE COURT: All right.
 3              Let me hear from Mr. -- Let's take them  one
 4    issue at a time.
 5              Let me hear from Mr. Runowicz on that.
 6              MR. RUNOWICZ: In respect to the career
 7    criminal, Your Honor?
 8              THE COURT: Yes.
 9              MR. RUNOWICZ: Yes.
10              Your Honor, when Mr. Sullivan brought this
11    attention to -- to my attention, you know, there was an
12    issue late Friday, and I endeavored to try and obtain
13    some information, was unsuccessful 'til yesterday
14    morning, and what I was able to discover, and provided
15    to the Court as attachments to my memorandum, I
16    apologize for getting it to the Court this morning.  I
17    had sent it down by e-mail last night, expecting that
18    someone in my office would be delivering it to chambers
19    last evening, and I found out this morning that did not
20    happen.  But, with respect to the two offenses that are
21    reflected there, I believe paragraph -- so the record's
22    clear, I think it was paragraph 48, talked about, in
23    it, a violation for 15 years, and then 49 was a
24    violation of 15 years, the same date.
25              I was able to determine that on November 29,
```

1  1986, Mr. Smith was, in fact, arrested by police

2  officers executing a warrant, and after a high speed

3  chase, and those records reflected in the police

4  reports I was able to obtain, which were attached as

5  Exhibit Number 1.

6          THE COURT:  Exhibit 1.

7          MR. RUNOWICZ:  And essentially, it identifies

8  the initiation of an investigation that Mr. Smith was

9  operating a drug factory, selling drugs out of a

10 particular location.

11         The officer who was conducting the

12 investigation determined, and I'd draw the attention to

13 the Court to page -- what would be the second page of

14 Exhibit 1, where that he indicates that, "I'm aware

15 that Mr. Smith is also currently being sought by the

16 Connecticut State Police Statewide Narcotics Task

17 Force, Central Division, pursuant to a recent narcotics

18 investigation.

19         The state police warrant charges Marvin

20 Smith, alias Leo the Lion, with operating a drug

21 factory, possession of narcotics substance, possession

22 of narcotic substance with intent sell, and possession

23 of drug paraphernalia; that the Court set bond on this

24 warrant in the sum of $100,000.

25         It also found -- The officers then began a

1   surveillance and an investigation and -- with the

2   intent to obtain an arrest warrant and a search warrant

3   for the location in which drug distribution was being

4   suspected.

5           The second report, one, two, it should

6   roughly the fifth page, Your Honor, basically denotes

7   the notes the events of November 29th, 1986.

8           I would to draw the Court's attention to the

9   complaint number, which is listed in the upper,

10  lefthand corner as 113663; Date of the Incident:

11  November 29, 1986, and this begins to talk about the

12  surveillance activities by the agents, and then the

13  following page after that, a discussion of after the

14  agent saw Mr. Smith leave the location at which the

15  search warrant was to be obtained, with him carrying

16  small bag, got into his van and the officers began to

17  approach him in his van, noticed that it had -- was

18  lacking a visible marker plate and they were going to

19  attempt to pull him over, and then to the extending

20  paragraphs, it discusses Mr. Smith's efforts to evade

21  that, driving around, police cars blocking

22  intersections, driving up on a curb going around them,

23  going through multiple red lights, and then going down

24  a one-way street the wrong way, ultimately

25  unsuccessfully, ultimately he was captured, and he was

1   placed under arrest for those offenses.  He was found
2   in possession of drugs, money, et cetera, and he was
3   arrested.

4             I was advised by the officer who was trying
5   to make this -- trying to obtain these records for me,
6   that he also was able to obtain, in looking through the
7   records, a second report, which referenced a -- which
8   is attached as Government Exhibit Number 2, and
9   essentially what that report is, and as explained to me
10  by the -- Officer Cruz, at the time that the -- of
11  these events, back in 1986, when officers, after they
12  process through they -- as they were processing an
13  individual arrest, they would make a routine check for
14  previous warrants.  If they were to find those
15  warrants, then all they would be required to do is file
16  a simple report which is -- as would have existed in
17  Exhibit Number 2, and all that would reference is that
18  they found -- they determined there was a prior arrest
19  warrant and he was arrested on that, and he's arrested
20  on a Complaint Number 4295, and the day of the arrest
21  actually is -- they listed as 11/30 1986, the day --
22  essentially, I'm sure it's the same night kind of thing
23  like that, but technically the 11/30/86 as opposed to
24  11/29/86 in the presentence report.

25             What I was -- What was explained to me, Your

1   Honor, was that this complaint clearly references a
2   different case than the one that Mr. Smith was being
3   charged with.  There are almost 100,000 numbers --
4   complaint numbers from the initial time, so therefore,
5   what they explained to me is that they weren't able to
6   go any further in the short period of time that I'd
7   given them, that this was obviously an arrest warrant
8   issued very early in the year of 1986, as opposed to
9   the arrest warrant issued on November 29, 1986, and
10  therefore that's the position that I took, that these
11  were separate offenses and they are not related cases,
12  and simply the fact that he's get -- got arrested on
13  two days -- two different days, doesn't -- to me
14  doesn't make it a related offense as I explained in my
15  memorandum.

16          I agree with counsel with respect to
17  paragraph 51, I'm sorry 50, which is the 1987 one,
18  where we just discussed were it's now countable as
19  three points.

20          While Mr. Smith was, in fact, charged with a
21  sale count at that time, it appears, based on all the
22  information I had -- was able to obtain, he was, in
23  fact, convicted of a possession count under the
24  Connecticut state statute.  When we review that
25  statute, that statute does not require any evidence of

1    possession with intent to sell, and I think that is

2    necessary for an offense to be considered a controlled

3    substance offence for purposes of career offender. So

4    I have to reluctantly agree that that conviction in

5    paragraph 50 can't count towards career offender, but I

6    -- my position is that the two offenses which reflect

7    in paragraphs 18 and 19 are separate offenses, and

8    therefore he qualifies as a career offender.

9           THE COURT: Any response, Mr. Sullivan?

10          MR. SULLIVAN: Briefly, Your Honor.

11          As I emphasized in the brief that I

12    submitted, the second circuit has made clear that

13    doubts on the career offender determination are to be

14    resolved in favor of the defendant because of the

15    extremely harsh consequences of a finding in favor of

16    that status.

17          The -- I respectfully disagree with my

18    friend, Mr. Runowicz, with respect to how one should

19    read these reports. They clearly read as one where we

20    don't know why they didn't execute that earlier

21    warrant, but what they had was -- those reports began

22    with someone coming in and saying, "Do you realize that

23    this guy's operating a drug operation in his

24    apartment?", and they said, "Gee, we've got a warrant

25    for this very thing outstanding", and then they made an

1    effort to get one of these people to go in and actually

2    buy drugs from him unsuccessfully in order to

3    effectuate the warrant.

4         So there's no question, from a complete

5    reading of all of this, that it's all the same common

6    scheme or plan, as is the -- is, you know, 4A1.12, you

7    know, makes clear that if it's part of a single common

8    scheme or plan, that it's considered a related

9    incident.

10        The fact that he tried to avoid the arrest

11   doesn't cause that to be a second career offender

12   incident.  It's clear that these two were related and

13   we shouldn't be speculating into exactly why it is that

14   he was arrested on the same day, if it's not clear from

15   the record that there's some alternative explanation.

16        So I don't think there is any fair

17   explanation.  They apprehended him for one thing  and

18   they prosecuted him for it, and it's related.

19             I think I'm repeating myself, Your Honor.

20             THE COURT:  Okay.

21        The Court's gonna make a finding that the

22   offenses set out in paragraphs 48 and 49 of the

23   presentence report are related offenses, and the Court

24   is not going to find Mr. Smith to be a career offender,

25   and the Court will make a finding that his criminal

1    history is III because he does get three points for

2    that last conviction, and he gets three points, which

3    is a total of six points altogether, three points for

4    the 48 and 49, three  points for the last convictions,

5    total of six points, which puts him into a criminal

6    history category of 32.

7            Now, you had other issues you wanted to raise

8    before we -- I make a final finding, Mr. Sullivan?

9            Mr. SULLIVAN:  I do, Your Honor.

10           The next argument I would make, and I won't

11   dwell too much on it, but I've argued that the Court

12   should not aggregate the two separate incidents under

13   relevant conduct considerations that surface in this

14   case.

15           He pled out to a three and a half gram

16   transaction.  There was another one -- another incident

17   that the government would aggregate under relevant

18   conduct.  I argue that I believe that the supreme court

19   should and will revisit the Watts (phonetic) case.  I'm

20   sure my argument's are clear, and that is that there

21   were dissenting opinions saying we really gave kind of

22   short shrift to this whole aggregation thing and that

23   it's something that really ought to be revisited, and

24   so therefore, I'm making this argument for the record.

25           I would urge the Court to find that only the

1  three and a half gram count should count, recognizing

2  though, that what I'm arguing for really is a good

3  faith change in the law, and so I respectfully ask the

4  Court to do what it thinks appropriate with that

5  argument.

6          THE COURT:  Mr. Runowicz?

7          MR. RUNOWICZ.  Your Honor, I think the

8  position the defendant takes would basically throw --

9  overthrow the body of law that's developed in the

10 circuit since 1987 when the guidelines first came in.

11         The guidelines, in the second circuit, and

12 actually the supreme court and, I think, and anywhere

13 else that has looked at this issue, has agreed that

14 relevant conduct calls for an accumulation of the drugs

15 involved in this particular case.

16         In this case, we're talking about two

17 separate -- well, two transactions within three  days

18 of each other.  Clearly, you know, if this is relevant

19 conduct, that's -- this is precisely what relevant

20 conduct is with respect to --

21         THE COURT:  What paragraph of the presentence

22 report are we -- Where are we?

23         MR. RUNOWICZ:  Just give me one second, Your

24 Honor.

25         (Pause.)

```
 1              MR. RUNOWICZ:  Paragraph 6 through the
 2   presentence report, Your Honor.  Paragraphs 6 through
 3   11 discuss the transaction that took place on January
 4   14, 2003, followed by paragraphs 12 through 14 which
 5   describe the transaction two days later, January 16th.
 6              In the first set of transactions Mr. Smith
 7   spent   sorry, sold roughly 3.5 grams of cocaine base
 8   to a cooperating witness, and then two days later he
 9   sold 53.4 grams to the same cooperating witness, for a
10   total of roughly whatever -- I guess  was a little of
11   56 grams.
12              THE COURT:  Where are we in the plea
13   agreement?  Where is that referenced in the plea
14   agreement?
15              MR. RUNOWICZ:  With respect to what, Your
16   Honor?
17              THE COURT:  The amount.
18              MR. RUNOWICZ:  I don't believe the plea
19   agreement had any stipulation, Your Honor, with respect
20   to quantity.  It simply was just an open plea
21   agreement.  The defendant is plead guilty to a
22   particular account.  We recognize that the sentencing
23   guidelines would be in effect at that time.
24              THE COURT:  Do you recollect, Mr. Runowicz,
25   whether or not at the -- when he -- when I took his
```

1   plea, whether the amount was discussed either by you or
2   by Mr. Sullivan?
3           MR. RUNOWICZ:  Truth, I can't recall.  I
4   don't know --
5           THE COURT:  Do you recollect, Mr. Sullivan?
6           MR. SULLIVAN:  Your Honor, I think it would
7   be greatly unfair of us to try to claim that those
8   quantities were not agreed quantities.  We've right
9   along agreed that it was three and a half  grams, and I
10  believe it was stated on the record that the first
11  quantity was three and a half.
12          There was some debate about what the other
13  quantity was, but the plea of conviction was the three
14  and a half gram quantity.  We're not claiming it wasn't
15  put on the record, that wasn't --
16          THE COURT:  No.  No.  No.  No.  That's -- I
17  understand that.  I'm talking about Mr. Runowicz's
18  position now wants to aggregate the amounts.
19          Isn't that correct, Mr. --
20          MR. RUNOWICZ:  That's correct, Your Honor.
21          THE COURT:  Up to 50, how much?
22          MR. RUNOWICZ:  A little over 56 grams, I
23  believe.
24          THE COURT:  My question is, did we talk about
25  56 grams at the time he pled guilty, or did we talk

```
1    about three and a half grams?
2              MR. SULLIVAN:  I think we talked about three
3    and a half grams, Your Honor, and I don't believe we
4    talked about any other quantity than that.
5              THE COURT:  My point being, Mr. Runowicz, as
6    a matter of fundamental fairness, if he was aware at
7    the time he pled, that the government was going to take
8    the position that it was 56 grams, not three and a half
9    grams, would it have made a difference in his plea
10   negotiations?  That's my question.
11             MR. RUNOWICZ:  Well, Your Honor, with respect
12   --
13             MR. SULLIVAN:  We knew, Your Honor.  We knew.
14   We're not going to claim --
15             THE COURT:  You knew what?
16             MR. SULLIVAN:  Your Honor, I would say that
17   for relevant conduct purposes, certainly we knew that
18   there was this other transaction out there, that the
19   government would claim was relevant conduct.  We knew
20   that going in and I wouldn't stand here and claim that
21   we didn't.
22             THE COURT:  Okay.
23             MR. SULLIVAN:  But --
24             THE COURT:  Fair enough.
25             MR. SULLIVAN:  For statutory purposes it made
```

1   it different, but for guidelines purposes, I expected
2   Mr. Runowicz to claim that second transaction.
3           I'm claiming that legally we shouldn't be,
4   but I -- we can't claim we didn't know.
5           THE COURT:  Okay.  CJ?
6       (The Court and the Probation Officer confer.)
7           THE COURT:  All right, the Court is going to
8   make a finding that the amount involved is the 56
9   grams, and that that is related conduct, so  what's the
10  next issue, Mr. --
11          MR. SULLIVAN:  Thank you, Your Honor.
12          Your Honor, the next -- I would take two
13  arguments together, and that would be the obstruction
14  and acceptance of responsibility.
15          The government has made clear in the plea
16  agreement and again in their sentencing memorandum,
17  that they are not -- I mean, that they've agreed to a
18  three-point reduction for acceptance of responsibility
19  and they are not seeking an obstruction, and they set
20  forth the reasons for that.
21          I'm going to just ask the Court to adopt the
22  government's position on that.  That was one of the
23  fundamental reasons why Mr. Smith entered into the plea
24  in the first place, and so if the Court is inclined
25  either to deny acceptance or to seek an obstruction, I

1  would be happy to try to address that but --

2           THE COURT:  Well, let me hear it from Mr.

3  Runowicz on that.

4           What's your position on that, Mr. Runowicz?

5           MR. RUNOWICZ:  Your Honor, I understand the

6  presentence report as written by probation, it ascribes

7  two levels -- a two-level increase for obstruction of

8  justice for Mr. Smith and then --

9           THE COURT:  Well, --

10          MR. RUNOWICZ:  -- in light of that --

11          THE COURT:  -- she starts at Level 32,

12 correct?

13          MR. RUNOWICZ:  That's correct, based on the

14 offense amount.  That's correct Your Honor.

15          THE COURT:  So if you gave him obstruction,

16 that takes you to 34?

17          MR. RUNOWICZ:  Correct.

18          THE COURT:  And if you gave him acceptance

19 he's --

20          MR. RUNOWICZ:  Down to 31.

21          THE COURT:  -- he's down to 31, and level 31,

22 Criminal History Category III is 135 to 168 months.

23          MR. RUNOWICZ:  Right.

24          THE COURT:  Do you object to that?

25          MR. RUNOWICZ:  No.

1              THE COURT:  You do not?

2              MR. RUNOWICZ:  I do not.

3              THE COURT:  Okay.

4              MR. RUNOWICZ:  I'd like to see if I could

5    just put this -- just so the Court is -- understands

6    and put this all into somewhat of a  perspective.

7              Mr. Smith -- When I was first assigned this

8    case, this was after the events that took place with

9    respect to the purchases of the drugs.

10             In reviewing the case, reviewing Mr. Smith's

11   history, I realized that Mr. Smith was (inaudible) face

12   substantially a very, very high sentence, and that

13   would be potentially mandatory life because if

14   (inaudible) convicted of the 50 gram sale, because of

15   his seven prior drug convictions, and the government

16   file it's information that's right, under Title 21,

17   United States Code, Section 851, that he could -- would

18   face mandatory life.  Candidly, Your Honor, that's not

19   an appropriate sentence for this defendant.  I think

20   that's way too much time.

21             THE COURT:  Mr. Smith is what?  He's gonna be

22   54--

23             MR. RUNOWICZ:  That's my age.

24             THE COURT:  -- in July?

25             MR. RUNOWICZ:  Yes, and notwithstanding the

1   fact that he had seven prior convictions, I felt that
2   was just way too much time.  Therefore, before we
3   initiated criminal charges in this case, I asked the
4   agents to contact Mr. Smith to give him -- to explain
5   to him where he was at and perhaps give him an
6   opportunity to help himself to cooperate.  They didn't
7   They did do that.  He chose not to take the
8   government up on its offer, so we proceeded with the
9   filing of the charges.

10          Again, under the dictates of the Department
11  of Justice, I was required to file an 851 alleging
12  prior drug convictions.  If I did that again, Mr. Smith
13  would've been faced with -- if convicted of Count Two,
14  would've been faced with mandatory life sentence, and
15  again, based on my position, I'm not asking the Court
16  to slap me on the back and say "Good thing," but I'm
17  just trying to explain, try to do what we thought was
18  right for Mr. Smith.  That's why I essentially allowed
19  to enter a plea of guilty to Count One, in satisfaction
20  of the indictment.  The filing of an 851 with respect
21  to that, did not increase a mandatory minimum sentence
22  from 10 to 20 years, which is what he would've faced
23  had he been convicted just on Count Two alone, and with
24  insertion of more than one drug conviction, which he
25  has mandatory life, allowed him to plea to that to give

1    the Court, in some respects, somewhat a maximum

2    sentencing flexibility to fashion the appropriate

3    sentence for Mr. Smith.

4          Mr. Smith got out on bond.  There is a point

5    in time there was some discussions between him and

6    another individual regarding his current case.  In

7    those conversations Mr. Smith identified who he thought

8    was the cooperating witness in his initial case, and

9    indicated that he wanted him taken care of, or

10   essentially out of the picture, so therefore he would

11   not be testifying at his particular case.

12         An investigation began at that particular

13   point in time, and that's the basis, and there were

14   some conversations which were tape recorded, and that

15   was the basis for -- under which probation found that

16   he failed to -- Oh, I'm sorry, that he obstructed

17   justice.  He's actively making requests to have a

18   witness harmed.

19         In entering his plea, and the recommendation

20   for acceptance or responsibility, I had to weight that

21   information, which is serious, with the impact it would

22   have.

23         One of the arrangements I made -- I had -- an

24   agreement I had with the defendant through counsel, was

25   that if he were to agree to plea guilty without me

1   having to disclose the identity and confirm the
2   identity of the second person to whom he had made these
3   comments, which would not only, from the government's
4   perspective, in theory, still secure the safety of that
5   second person since the identity was not confirmed, and
6   also would allow that second person to continue
7   operating as a cooperating witness in a number of drug
8   cases in which that person was then, and still is,
9   cooperating.

10          The government agreed to recommend acceptance
11  of responsibility, and that's the position I'm in
12  today.

13          As of we speak at this particular point, Mr.
14  Smith has not forced me to make that disclosure, and
15  therefore, I would -- I feel constrained by the plea
16  agreement and by -- and certainly my obligations and my
17  agreements with him to recommend to the Court the
18  three-level for acceptance.

19          I would, and as I indicated to the probation
20  officer, I believe there's ample evidence in a
21  presentence report to sustain what the probation
22  officer has recommended with -- for obstruction of
23  justice, and if the Court has specific questions
24  regarding that, I (inaudible) answer, but I really
25  (inaudible) go any further than that.

1      Thank you.

2      THE COURT:  That's all right.  All right,

3  thank you.

4      You want to be heard on this?

5      MR. SULLIVAN:  Your Honor, if the Court

6  inclined to give an obstruction enhancement, yes, but

7  if the Court is not inclined I

8      THE COURT:  I am inclined to do so.

9      MR. SULLIVAN:  Your Honor, what I would say

10  briefly then, is that I can't quarrel with anything

11  that Mr. Runowicz had to say, although one factual

12  dispute is that he indicated that the CI told -- I mean

13  that Mr. Smith told the CI who, this cooperating

14  witness was, and it was actually the reverse.

15      The -- As I indicated in my sentencing

16  memorandum, and we were light on the facts with respect

17  to that, Your Honor, because --

18      THE COURT:  Well, the fact's seem to

19  indicate, Mr. Sullivan, that he threatened the witness.

20  That's what the fact's indicate.

21      MR. SULLIVAN:  If I may?  I -- We had

22  extensive discussions, and I would be remiss if I

23  didn't say, and I intended to say sometime during the

24  course of this preceding, that I want to thank Mr.

25  Runowicz for his highly professional and courteous

1    handling of this entire matter.  It's -- I -- He has

2    really done a great job and he has really considered

3    Mr. Smith's needs throughout the entire process,

4    there's no question about it.

5            The obstruction count has been a bit of a

6    problem for us because Mr. Smith has denied from day

7    one that he tried to have a witness harmed, and that

8    the person -- this person actually entered his life.

9    It's a person who he knew.  It was -- Mr. Smith had a

10   relationship with this person's mother.  There was

11   something on the order of like a wife, and this person

12   called him dad, called him father, up until a time

13   where it seemed that Mr. Smith no further relationship

14   with the mother, and he now had an ax to grind, and he

15   approached Mr. Smith and was doing the talking and

16   doing the proposing, and Mr. Smith was playing along.

17           I -- Mr. -- We tried our best not to get into

18   a hearing on all of this because that would result in

19   the disclosures that Mr. Runowicz is trying so hard to

20   avoid, so therefore, I found that I was constrained in

21   trying not press too hard to really flesh out all these

22   issues.

23           So it is our claim that he never intended to

24   try to harm a witness.  I personally have read through

25   at least a transcript of the tape, without having

1    actually heard the tape, and it seems to me that
2    although I can understand probation's position, and I
3    can understand that a prosecutor would be inclined to
4    say that there was an obstruction, it also is clear to
5    me that the tenor of the discussion is such that it's
6    completely consistent with my client's statement, that
7    he was just playing along with somebody who he didn't
8    want to irritate any further.
9            So having said all of those things, I really
10   do not think an obstruction charge is appropriate.   It
11   doesn't seem to me the government has been pressing for
12   one, but obviously is required to answer the Court's
13   questions and address what the probation thought.
14           THE COURT:   Well, I took Mr. Runowicz's
15   remarks to indicate that they were pressing for
16   obstruction --
17           MR. SULLIVAN:   I don't know whether they're
18   pressing --
19           THE COURT:   Am I correct or incorrect, Mr.
20   Runowicz?
21           MR. RUNOWICZ:   Your Honor, --
22           MR. SULLIVAN:   If I recall, Your Honor, you
23   said that you object to that position.
24           THE COURT:   Well, let me --
25           MR. SULLIVAN:   I think you said --

1          THE COURT:  I posed the question to Mr.

2    Runowicz, so I want an answer.

3          MR. RUNOWICZ:  Your Honor, I -- with respect

4    to sort of the position I was taking and the reference

5    to my conversations with counsel regarding this, I --

6    if you note in my sentencing memorandum, I did not

7    include a calculation of obstruction of justice in my

8    guideline calculation, Section 4.

9          Part of that, I guess, was -- is based

10   somewhat in that he's at a Level 34.  Had he been a

11   career offender, he'd be a Level 34 with the

12   obstruction.  Absent that, he'd be a Level 32 minus

13   three.

14         I'm kind of like in a -- I feel sort of

15   somewhat in a (inaudible), Your Honor, I guess in order

16   to fulfil sort of my statements to counsel and the

17   position it took, and we provided the facts to

18   probation, they made their determination, it would

19   leave it to the Court, I wouldn't take a position with

20   respect to that.

21         So I -- and I guess in a long about way, to

22   answer your question, I'm not moving for obstruction of

23   justice.

24         THE COURT:  Okay.  Then, the Court will find

25   that he's at Level 32, minus three for acceptance, so

1    that takes him to 29.  He's in Criminal History

2    Category III, and his range is 108 to 135 months, and

3    the Court so finds.

4            Okay.  I'll hear from you, Mr. Sullivan, with

5    respect to the sentence to be imposed.

6            MR. SULLIVAN:  Your Honor, that is fine.  I

7    appreciate everything the Court has done with respect

8    to this sentencing.

9            I did have one other argument that I made in

10   my papers.  It was requesting a downward departure

11   because of assistance to the state authorities.  I

12   think my papers make clear what our position is on

13   that.

14           THE COURT:  You have.

15           MR. SULLIVAN:  So -- And the -- So, I don't

16   believe I have any other arguments to make with respect

17   to the sentence to be imposed.

18           THE COURT:  Mr. Smith, anything you wish to

19   say?

20           THE DEFENDANT:  Yes, Your Honor.

21           First of all, I'd like to apologize to the --

22   to Your Honor and the court system for my repeated drug

23   abuse.

24           Your Honor, I'm sorry for being weak in

25   letting my addiction get the best of me, but at the

1  time of my daughter's murder I just couldn't handle it.
2  Please understand what I went through and allow me to
3  continue to live.

4       I do have a addictive personality for which I
5  will continue to seek help for, and I know what I did
6  was wrong and I accept full responsibility for it.

7       Secondly, I'd like to apologize to my family.
8  I've not been the perfect husband, father, son or
9  brother, but I did try.  I am sorry that I did not try
10 hard enough.  They have stuck by me through thick and
11 thin and have never given up on me, even when I did was
12 wrong.

13      If given the chance, I won't let you down
14 again.  Life goes on and I want you to remember my
15 smile and the love that I'll always have you in my
16 heart.

17      Thank you.

18      THE COURT:  Mr. Runowicz?

19      MR. RUNOWICZ:  Your Honor, just in -- in
20 passing on sentence today, just (inaudible) the Court
21 to consider, and the government has no objection to the
22 range and quantities that -- just so the record's clear
23 with respect to the range that the Court has found, but
24 just to try keep this in perspective, this will be Mr.
25 Smith's -- I know it's a lot of time, even though

1   (inaudible) 108 months for someone who's 54 is a lot of
2   time, but this is his eighth conviction. He has been -
3   - Basically his whole life, he's been a drug dealer.

4          He's -- He was prosecuted. He served a
5   substantial period of time. In fact, Mr. Markle of our
6   office, the Court is aware, Mr. Markle prosecuted Mr.
7   Smith when Mr. Smith was a -- when he was an assistant
8   state attorney in Connecticut, and then Mr. Smith gets
9   out of jail and essentially he's right back, maybe
10  there's a several-year lapse, but now he's back before
11  the Court again, selling crack cocaine, and not in an
12  insignificant amount.

13         I'd just ask the Court to consider that in
14  imposing a sentence, that Mr. Smith, this is his eighth
15  conviction, six of which, you know, has not been
16  counted because of their age. I'm not asking the Court
17  to depart upward by any means. I hope the Court
18  doesn't take that as -- but I just -- in  imposing
19  sentence within the range, I'd ask the Court to
20  consider that.

21         THE COURT: All right.

22         Mr. Smith, just let me say I preface my
23  remarks by indicating that the -- there are two factors
24  that I think play into -- come into play with respect
25  to the sentence that I think is appropriate in your

1    case.

2         While I didn't give you obstruction of
3    justice, because I had the sense that the government
4    was not pressing it, the Court can't ignore the fact
5    that there is somewhat credible evidence that you did
6    threaten a witness, and that's a very serious matter,
7    so that's going to be factored into where I go with
8    respect to your sentence.

9         Second point is that you were basically
10   straight, for about seven years after you got out of
11   your last -- after you were released from your last
12   jail sentence, and at least as far as the record is
13   concerned, it would appear that you were not engaged in
14   narcotics activity.

15        I say "not appear." You weren't arrested and
16   I've been presented with no evidence to indicate that
17   you had resumed your drug activity; and the third
18   factor, of course, was the death of your daughter,
19   which was a tragic event in your life obviously. For
20   anyone to lose a child is a great tragedy, and the
21   manner in which she died, right -- as I understand it,
22   almost in front of the house in which you were staying,
23   you were babysitting with your grandchild. She went
24   out to go to the store to buy ice cream, to come back
25   with the ice cream, and while she was waling back to

1   the house, there was some kind of a drive-by shooting,

2   she got caught in the cross-fire and was killed.  An

3   innocent young woman.  It was a tragedy, and your

4   statements to the probation officer, and the fact's

5   would indicate that that really set you into a tail

6   spin of back into alcoholism and drug addiction, and as

7   with so many people who are addicted to drugs, they

8   support their habit and their addiction by dealing

9   drugs, and so you went back into that cycle.

10          So the Court certainly is aware of those

11   things and is -- has taken them into consideration.

12          I think that a fair sentence here, within

13   this range of 108 to 135 months, is 120 months, with

14   credit for time served.

15          You've been incarcerated now since, let's

16   see, February 26, 2004, so you'll be -- receive credit

17   for that period of time.

18          MR. SULLIVAN:  Your Honor, not to interrupt

19   but I -- he advises me that he was in for 44 days

20   before he got bonded out, as well.

21          THE COURT:  All right.  We'll have to take

22   that, so -- Before February 26th?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Well, whatever the record

25   indicates, and Mr. Runowicz, you can -- whatever the

1   record indicates, as far as the period of time that he
2   has spent incarcerated on this conviction, he's to
3   receive credit for against the 120 months.
4           MR. RUNOWICZ: Yes, Your Honor.
5           When Mr. Smith was initially -- When the
6   charges were filed in this case, Mr. Smith was
7   arrested, a detention hearing was held before
8   Magistrate Judge Smith in Hartford as this case had
9   been -- at that time was assigned to Judge Squatrito.
10   He was ordered and temporarily detained while he
11   developed a bond package. At a point in time he did
12   provide, to convince magistrate Smith that there was
13   significant, you know, guarantees that he would meet
14   his court commitments and he was released, so he did
15   spend a period of time. I don't know whether it was 44
16   days, but clearly, at least my understanding with how
17   it's calculated, he would get credit for that time by
18   --
19           THE COURT: Whatever time he has spent, he's
20   to receive credit for.
21           I want to say one other thing to you, Mr.
22   Smith. You know, anybody who's involved in drug
23   dealing, as you have been for a long, long time, never
24   really thinks about the victims of your crimes, and the
25   victims of your crimes as a drug dealer, are young

1    people the age of your daughter.  The drugs that you're
2    selling out on the street are getting into the hands of
3    young people the same age as your daughter.

4              I think you have other children, as well.
5              THE DEFENDANT:  Yes.
6              THE COURT:  And you have grandchildren.
7              THE DEFENDANT:  Yes.

8              THE COURT:  Well, think about, as a father
9    and as a grandfather, how you would feel if one of your
10   children or one of your grandchildren became addicted
11   to crack or cocaine or heroin.  How would you feel
12   about the person that was selling it to them?  And
13   that's what you were doing.  You were putting poison
14   into the bodies of all these young children, young
15   people on the streets of New Haven or Bridgeport, or
16   wherever it was that you were doing your drug dealing,
17   and you ought to think about that, and how you would
18   react, as a father and as a grandfather, to someone who
19   was doing that to one of your children.

20             The Court is going to put you on supervised
21   release for a period of six years  following your
22   release from incarceration.

23             No fine is imposed, and the Court imposes a
24   special assessment at $100.

25             I mentioned -- I should mention one other

1   factor because I want you to understand this.

2          I did give you credit for the information you

3   provided to the Vernon Police Department.  That was

4   another factor that I considered in your sentence.  You

5   did come forward voluntarily.  You did provide

6   information to the Vernon Police Department with

7   respect to a bank robbery, or a series of bank

8   robberies that had taken place in Vernon, and it -- in

9   the end, the person who you identified did turn out to

10  be the person who was committing the bank robberies.

11  They had other information leading to that person, but

12  your information corroborated information that they

13  already had, so you should receive credit for that, and

14  I did give you credit for that.

15         In addition to the standard conditions of

16  supervised release, I'm gonna order that you

17  participate in a program approved by the probation

18  office for inpatient or outpatient substance abuse

19  treatment and testing, and you are to pay all or a

20  portion of the cost associated with treatment based on

21  your ability to pay, as determined by the probation

22  officer.

23         One further recommendation is that you be

24  designated to a facility as close as possible to

25  Connecticut so that family member's can visit you more

1    easily, and I'm also going to recommend that you

2    participate in a 500-hour drug treatment program while

3    incarcerated, and that your designation should take

4    into consideration the availability of such a program,

5    so that the Bureau of Prisons tries to place you in a

6    facility that does have a 500-hour program available to

7    you.

8                You have ten days in which to take an appeal.

9

10               Oh, let me just say one other thing, that the

11   Court believes that the sentence of 120 months would

12   have been imposed regardless of the applicability of

13   the guidelines.  In other words, the Court would impose

14   this as a guideline sentence, and were there to be no

15   guidelines, the Court would still impose the same

16   sentence.

17               The Court is obliged to advise you, Mr.

18   Smith, that you have ten days to take an appeal.  If

19   you cannot afford to pay the filing fee, you can apply

20   to have the fee waived to -- so that you can pursue

21   your appeal.

22               If you cannot afford counsel to pursue the

23   appeal, you can apply to have counsel appointed to

24   pursue the appeal.

25               Mr. Runowicz, anything further?

1    MR. RUNOWICZ: No, I believe you've covered
2  all the issues, Your Honor. Thank you very much.
3         THE COURT: Mr. Sullivan?
4         MR. SULLIVAN: Thank you, Your Honor.
5         There's only one thing that it just occurs to
6  me that I overlooked, and I'm sure the Court has
7  already considered this, but since I    it's not    as
8  a matter of record, I should point it out.
9         Yesterday, Mr. Smith pointed out to me two
10  cases, and I called chambers this morning and I called
11  opposing counsel this morning and alerted everyone that
12  our position is -- There are two  cases that were
13  decided in March wherein the Court departed downwards
14  on the basis that the crack guideline, which is a
15  hundred times greater than the cocaine guideline, is so
16  much greater than what at least those judges thought
17  was appropriate.
18         That was the Simon case, 2005 West Law 711916
19  out of the Eastern District of New York, and the Smith
20  case, 2005 West Law 549057.
21         In each case they were well thought out
22  opinions indicating that a hundred to one ratio was too
23  high.  They still find -- found a higher ratio, but
24  took issue with congresses unwillingness to get in line
25  with what would seem to be a more appropriate ratio.

1         One last thing is I also mention that the
2    Simon case took into consideration the fact that the
3    guidelines don't seem to take into consideration that
4    age, although not usually an appropriate factor for the
5    Court, is something that, as one gets older recidivism
6    intends to decrease pretty significantly, and so that
7    case addressed that and I believe gave a downward
8    departure on the basis of it.
9         I'm only -- I know the Court got the message
10   and I'm sure contemplated those things, but since it
11   wasn't in the record, and I told my client I would make
12   the argument.  I'd make that supplement.
13        Thank you.
14        THE COURT:  The Court has considered both the
15   Simon case and the John Smith case from Wisconsin and
16   believes the sentence imposed is a fair sentence,
17   having considered all the factors that I've mentioned,
18   as well as the factors set out in these two cases.
19        MR. SULLIVAN:  Thank you.
20        THE COURT:  Anything else?
21        MR. SULLIVAN:  Nothing further.
22        THE COURT:  Mr. Runowicz?
23        MR. RUNOWICZ:  No, Your Honor.
24        THE DEFENDANT:  Thank you, Your Honor.
25        (Proceedings concluded at 11:15 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings
in the above-entitled matter.

_Stephen C. Bowles_          August 16, 2005

STEPHEN C. BOWLES